UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONNIE PRYOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:21-cv-2234 |
| ) | |
| ASCENSION HEALTH ALLIANCE, INC., ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Monnie Pryor, ("Pryor"), by counsel, files this Complaint and Demand for Jury Trial against Defendant Ascension Health Alliance, Inc. ("Ascension") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

**I.  PARTIES, VENUE, AND JURISDICTION**

1. Pryor is a citizen of Indiana and a resident of Avon, Indiana.

2. Ascension Health Alliance, Inc. is a foreign non-profit corporation organized and incorporated under the laws of Missouri. Ascension has multiple places of business in Indianapolis, Indiana, and does business in the Southern District of Indiana.

3. At all relevant times, Ascension was an "employer" as defined under the Age Discrimination in Employment Act, 29 U.S.C. § 630(b).

4. At all relevant times, Pryor was an "employee" as defined by the Age Discrimination in Employment Act, 29 U.S.C. § 630(f). Pryor is forty-two years old.

5. Pryor, a female, was an "employee" of Ascension as defined in 42 U.S.C. 2000e(f).

6. This Court has personal jurisdiction over Plaintiff and Defendant and venue is proper in this Court.

7. This Court has original subject matter jurisdiction over Pryor's claims arising under Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C. § 2000e-2 and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391, in that Ascension is subject to personal jurisdiction in the Southern District of Indiana, Ascension regularly conducts business activities within the Southern District of Indiana, and the events giving rise to the claims occurred in the Southern District of Indiana.

8. Pryor satisfied her requirements to exhaust administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 12, 2020, against Ascension (Charge No. 470-2021-00479).

9. On or about May 13, 2021, the EEOC issued a Notice of Right to Sue related to Pryor's Charge of Discrimination against Ascension.

## II.   FACTUAL ALLEGATIONS

10. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

11. From 2014 and until recently, Pryor worked as a Human Resources Advisor with Ascension.

12. In each of her Associate Evaluations from 2016-2019, Pryor either fully met expectations (2016, 2018, and 2019), or exceeded expectations (2017).

13. In fact, in the 2017 evaluation for roles as Contract Center Manager, her evaluator stated: "Monnie is an exceptional leader that is intentional in her delivery. She has had a great year in the Contract Center."

14. Pryor turned 40 in September, 2018.

15. In March 2019, Jason Pagan assigned Pryor to a project to eliminate 5-6 executive level positions.

16. Pryor would not typically handle this type of assignment, but Hannah Brown (Ascension in house attorney) told Pryor that Kellie Harris (the HR Partner who normally would handle these eliminations) had some sort of relationship with one of these executives, so Pryor was asked to work on this project instead.

17. A few months later, Pryor began hearing that Harris did not like her, and this was clear from her behavior.

18. When Pryor would politely say "Hi, Kellie," Harris would roll her eyes at Pryor.

19. On June 30, 2019, Pryor complained via text messages to the Vice President of HR, Ed Daech, about Harris's negative treatment of Pryor.

20. Daech replied by text, but provided no follow up.

21. Pryor complained again on August 12, 2019. Daech acknowledged receipt of the complaint, even saying "I will find time for you, Steve [Kile] and me to connect by phone to discuss in more detail," but again failed to follow up.

22. Harris found out about these complaints and treated Pryor poorly in retaliation.

23. By November 4, 2019, Harris's behavior toward Pryor escalated to the point where she was blatantly rude to Pryor in a team meeting with other members of HR, making unprofessional comments and rolling her eyes at Pryor.

24. It was only after that meeting that Steve Kile ("Kile") finally called a meeting between Harris and Pryor.

25. Even though Harris may not have asked for a meeting, it was not until Harris (younger, White) raised concerns that Kile decided to finally set a meeting, even though Pryor had been asking for a meeting for months, which Kile acknowledged.

26. Harris bullied Pryor, treated her unfairly with a leader in the room, and targeted Pryor as the problem.

27. On November 5, 2019, Pryor complained of a hostile work environment via email.

28. Since that time, Pryor had a target on her back.

29. On February 23, 2020, Laura Atkinson was promoted to HR Director.

30. After Pryor's complaint of a hostile work environment, Atkinson ignored Pryor and excluded her from several meetings that were essential for her job.

31. In May, 2020, Pryor was consulted on an employee termination and assisted a leader.

32. Pryor followed the same standard procedure as she had always done. Pryor let Atkinson know the terminated employee was upset and that the situation might escalate—which was not uncommon.

33. On May 15, 2020, Daech called Pryor to deliver a corrective action related to her handling of the termination. Pryor requested a review of the adverse action.

34. The issuance of the corrective action prevented Pryor from receiving a bonus, and from transferring to another job.

35. Pryor had a call with Atkinson, who told Pryor that she did not think what she had done was "bad," and that she really like working with her. However, the corrective action was not removed.

36. Harris, a younger White woman, has no corrective action taken against her, despite following the *same* process that formed the basis for Pryor's disciplinary action.

37. On June 4, 2020, shortly after Pryor received her unwarranted corrective action, Atkinson announced that HR advisors were being converted to "Associate Relation Specialists," and informed the staff that anyone interested in two new HR Partner positions should apply by June 5, 2020.

38. Pryor sent an email stating that she was interested, and applied for the position.

39. Atkinson, who signed Pryor's Corrective Action, responded: "Thank you for letting me know your interest in the HR Partner Role. I'm excited to have this conversation with you and sent you a meeting invite for next week."

40. On June 10, 2020, Pryor interviewed for the position.

41. Two days later, on June 12, 2020, Atkinson sent an email to the team announcing the selection of advisors Jordan Hall, who is young and Black, and Maggie Steele, who is young and White.

42. Both women claimed they were not interested in the new roles and were not applying.

43. Nevertheless, the newest advisors, with the least amount of experience, were given the job instead of the candidates over 40 years old, with double the experience.

44. Pryor had six years of experience at Ascension, and yet was passed over for a promotion by two younger, less experienced employees.

45. Both women are almost two decades younger than Pryor and each has a fraction of her experience.

46. Four associates, including Pryor, interviewed for the HR Business Partner role on June 10, 2020.

47. Pryor then complained to Daech and Atkinson, by email and over the phone, that she was being discriminated against because she is an older Black woman.

48. Based on Ascension's discriminatory practices and treatment over the past year, Pryor sent an email on June 11, 2020, and June 12, 2020, to Daech and Atkinson complaining of discriminatory practices and retaliation.

49. Three days later, on June 15, 2020, Pryor had a meeting with Daech to discuss her complaints.

50. Daech called Pryor "emotional," in reference to her gender, and refused to reverse the corrective action plan in her file.

51. On September 30, 2020, Pryor learned that her job was being "eliminated" effective October 30, 2020.

### III.    LEGAL ALLEGATIONS

#### Count I:    Violation of the ADEA – Discrimination on the Basis of Age

52. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

53. Pryor is over forty years old and a member of a protected class.

54. Pryor is qualified for and applied for the HR Business Partner position.

55. Pryor was not selected for the position.

56. Similarly situated employees outside her protected class were treated more favorably in that they were hired for the position.

57. Pryor's age was the actual and proximate cause of Ascension's failure to hire or promote her to the HR Business Partner position.

58. Ascension willfully violated the Age Discrimination in Employment Act.

59. Pryor has suffered damages as a result of Ascension's discrimination.

**Count II:     Violation of Title VII and the ADEA – Retaliation**

60. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth there.

61. Pryor engaged in a protected making a good faith complaint to her superiors Daech and Atkinson about the retaliation and discriminatory practices she experienced on the bases of her age, race, and gender.

62. Pryor engaged in protective activity by opposing Defendant's unlawful employment practices, including but not limited to her opposition to Defendant's action towards her, the unfair corrective action, and discriminatory and retaliatory practices.

63. Pryor suffered one or more adverse employment actions, impacting the terms and conditions of her employment, including but not limited to a hostile work environment, termination, or Defendant's refusal to remove the unfair corrective action.

64. But for Pryor's protected activities, Defendant would not have taken adverse employment actions towards her.

65. Defendant retaliated against Pryor for complaining of discriminatory practice and treatment and accused her of being "emotional."

66. Pryor has suffered damages as a result of Defendant's retaliatory actions, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer benefits, and emotional distress.

## IV. RELIEF REQUESTED

Pryor requests the following relief:

a. Compensatory damages;

b. All salary, wages, compensation and benefits lost as a result of Defendant's unlawful actions, including, but not limited to, back pay, front pay, employer provided benefits, unpaid sales commissions, and loss of future earning capacity;

c. Liquidated damages and/or punitive damages;

d. All costs and reasonable attorney fees incurred in litigation this action;

e. Pre-judgment and post-judgment interest; and

f. Any and all other legal and/or equitable relief to which Pryor is entitled.

WHEREFORE, Plaintiff Monnie Pryor requests a judgment in her favor, the costs of this action, a trial by jury, and for all other just and proper relief.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Monnie Pryor*

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
aconklin@delaneylaw.net

## **JURY DEMAND**

Plaintiff, Monnie Pryor, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,


*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Monnie Pryor*